UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
LIBERTY MUTUAL FIRE INSURANCE COMPANY,   Civil Action No.:

                Plaintiff,

  -against-   **COMPLAINT**

WESTERN WORLD INSURANCE COMPANY,

                Defendant.
-------------------------------------------------------------------x

**M A D A M S/S I R S:**

      Plaintiff LIBERTY MUTUAL FIRE INSURANCE COMPANY ("Liberty Mutual"), by its attorneys, JAFFE & ASHER LLP, as and for its Complaint against defendant WESTERN WORLD INSURANCE COMPANY ("Western World"), alleges as follows:

### JURISDICTION AND VENUE

    1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a) by reason of the diversity of citizenship of the parties and the fact that the amount in controversy exceeds the sum of $75,000 exclusive of costs.

    2.    At all times hereinafter mentioned, Liberty Mutual was, and still is, a stock insurance company organized under the laws of the State of Wisconsin, with its principal place of business located at 175 Berkeley Street, Boston, Massachusetts 02116.

    3.    At all times hereinafter mentioned, Liberty Mutual was, and still is, an insurance company duly authorized to conduct business within the State of New York.

    4.    Upon information and belief, at all times hereinafter mentioned, Western World was, and still is, a stock insurance company organized under the laws of the State of New Hampshire, with its principal place of business located at 400 Parsons Pond Drive, Franklin Lakes, New Jersey 07417-2600.

5.  Upon information and belief, at all times hereinafter mentioned, Western World was, and still is, a non-admitted insurance company that issues insurance policies to businesses in the State of New York.

6.  This Court has venue over this matter pursuant to 28 U.S.C. § 1391.

## SUBSTANTIVE ALLEGATIONS

7.  On or about January 23, 2017, Chandradevi Jorre ("Jorre") commenced an action entitled <u>Chandradevi Jorre v. City of New York, Ironbound Investment Company, Inc., New York Community Bancorp. Inc., Queens County Savings and New York Community Bancorp., Inc. d/b/a Queens County Savings Bank.</u>, Index No. 677-2017, in the Supreme Court of the State of New York, County of Queens ("Underlying Action").

8.  In the Underlying Action, Jorre alleges a slip and fall that purportedly occurred on January 25, 2016 on the sidewalk outside of the building located at 98-16 101st Avenue, Ozone Park, Queens, New York (the "Premises").

9.  In Plaintiff's Verified Bill of Particulars as to Third-Party Defendant, Jorre specifically alleges that the basis of her claims include as follows:

> The defendants, their agents, servants, employees, and contractors/subcontractors in their ownership, operation, management, maintenance and control of the aforementioned premises and sidewalks, and the lack of same in causing, allowing and permitting the premises and/or sidewalks thereat and their surfaces and/or foundations to be in a state of negligent disrepair and maintenance, in a defective condition, to be uneven, cracked and laid with uneven concrete, with depressions and improper drainage, and to be icy, on a uneven, irregular, icy patch, covered with ice, snow and water; and to be improperly maintained, shoveled, salted, sanded, and to become into such a state of unsafe disrepair as to be a danger to any and all pedestrians passing by or over said sidewalks, said condition constituting a trap and a hazard, all in violation of accepted rules of common sense and common law as well as all applicable laws, rules, statutes and regulations,

all of which the defendants had both actual and constructive notice, as well as having actively caused and created.

10. On or about June 18, 2020, Ironbound Investment Company, LLC, i/s/h/a Ironbound Investment Company Inc., New York Community Bancorp, Inc. ("Bancorp"), Queens County Savings Bank, a division of New York Community Bank, i/s/h/a Queens County Savings Bank, and New York Community Bancorp, Inc. d/b/a Queens County Savings Bank (collectively, the "NYCB Defendants") impleaded Snow It All, Ltd. ("Snow It All") via third-party complaint into the Underlying Action, alleging that pursuant to a Snow Removal Agreement between Snow It All and Bancorp, Snow It All was responsible for performing snow removal work at the Premises (included in the definition of "Underlying Action").

11. The third-party plaintiffs in the Underlying Action allege that Snow It All negligently performed its duties under the contract, and was the proximate cause of Jorre's alleged injuries, seeking, inter alia, seek contribution, indemnification and damages for breach of contract and breach of warranty for Snow It All's failure to adequately perform its services under the contract.

12. On or about November 25, 2014, Bancorp entered into a contract with Snow It All as "Contractor", to provide Snow Removal Services at, inter alia, the Premises (the "Snow Removal Agreement").

13. The "Contract Term" in the Snow Removal Agreement states that "the Agreement shall be effective for two years."

14. The Snow Removal Agreement provides that, "[t]he Contractor shall immediately remove ice to provide secure footing or safe driving conditions on the Affected Areas."

15. The Snow Removal Agreement provides, in relevant part, as follows:

3

SECTION 8. (INSURANCE)

8.1. Insurance. Prior to commencement of the Services, and until completion and final acceptance of the Services, Contractor shall, at its sole expense, obtain and maintain, with insurance companies rated no lower than A-:VII in the most recent edition of A.M. Best's Property - Casualty Key Rating Guide and licensed to do business in the state where the work is being performed, the insurance coverages listed below:

8.2. The policies to be maintained by the Contractor are as follows:

\* \* \*

8.2.2. Commercial General Liability Insurance: An Insurance Services Office occurrence based Commercial General Liability Insurance Policy, including but not limited to contractual liability, personal injury liability, advertising injury liability and products/completed operations liability coverage with minimum limits of:

$ I million Each Occurrence
$2 million General Aggregate
$2 million Products/Completed Operations Aggregate

This policy shall be written on a per occurrence basis, and shall not be subject to deductibles or self-insured retentions.

\* \* \*

8.2.4. Umbrella Liability Insurance: Umbrella Liability Insurance at a limit of no less than:
$5,000,000 per occurrence
$5,000,000 annual aggregate.

This policy shall be written on an occurrence basis and provide excess coverage over all coverages and extensions noted in (a), (b), and (c) above.

\* \* \*

8.3. Additional Insured: The General Liability Policy, Commercial Auto Policy and Umbrella policies shall all be endorsed to name New York Community Bancorp, Inc., New York Community Bank and New York Commercial Bank, and their respective subsidiaries and affiliates as additional insured. Coverage for the Additional

4

Insured on all such policies shall apply on a primary basis irrespective of any other insurance, whether collectible or not.

16. Upon information and belief, Western World issued a Commercial Lines Policy, with a Commercial General Liability Coverage Part, No. NPP8280551, with a policy period from October 29, 2015 to October 29, 2016, to Snow It All, as the first Named Insured (the "Western World Policy").

17. Upon information and belief, the Western World Policy as an Each Occurrence Limit of $1 million.

18. Upon information and belief, the Western World Policy contains an endorsement entitled "Additional Insured Endorsement," which provides, in part, as follows:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> The insurance afforded by this policy for liability arising out of "bodily injury," "property damage" and/or "personal and advertising injury" shall also apply to the "additional insured" listed below, but only to the extent the "additional insured" is being held responsible for the acts, omissions and/or negligence of the "named insured."
>
> This insurance shall not apply to any liability arising out of the acts, omissions and/or negligence of the "additional insured."
>
> \* \* \*
>
> The inclusion of the "additional insured" shall not operate to increase the Limits of Insurance.
>
> To the extent, if any, that this policy affords coverage to an "additional insured," the "additional insured" is subject to all of the terms, conditions and exclusions of the policy.
>
> For the purpose of this endorsement, the "named insured" is the person(s) and/or party(ies) designated on the Declarations Page of the policy or on any endorsement. The "additional insured" is the person(s) and/or party(ies) identified below.
>
> Identity and interest of Additional Insured:

5

INSURED'S CLIENT

NY COMMUNITY BANCORP, INC.
NY COMMUNITY BANK, NY COMMERCIAL BANK,
PROSPECT REALTY HOLDING CO

19. Upon information and belief, the Western World Policy contains an "Other Insurance" provision that provides, in part, as follows:

> **4. Other Insurance**
>
> If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:
>
> **a. Primary Insurance**
>
> This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

20. Upon information and belief, no portion of "Paragraph **b.** below" applies when compared to the Liberty Mutual Policy (as defined below) for entities that qualify as additional insureds under the Western World Policy for the claims alleged in the Underlying Action.

21. Upon information and belief, Western World is providing a defense to Snow It All for the Underlying Action.

22. Liberty Mutual issued a Commercial General Liability policy, No. TB2-621-094445-025, with a policy period from May 31, 2015 to May 31, 2016, to Bancorp, as the first Named Insured (the "Liberty Mutual Policy").

23. The NYCB Defendants qualify as Named Insureds under the Liberty Mutual Policy.

6

24. The Liberty Mutual Policy contains an "Other Insurance" provision that provides, in relevant part, as follows:

**b. Excess Insurance**

(1) This insurance is excess over:

\* \* \*

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

25. The Liberty Mutual Policy defines the terms "you" and "your" as follows:

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.

26. On February 16, 2016, Liberty Mutual tendered the defense an indemnity of the NYCB Defendants to Snow It All both based on contractual indemnification and as an additional insured on Snow It All's insurance policy.

27. By letter dated March 25, 2016, Western World acknowledged receipt of the February 16, 2016 notice letter to Snow It All, denying any responsibility for the claims alleged in the Underlying Action, asserting that, "[b]ased on our investigation of the loss. there appears to be no liability or negligence on the part of Snow It All Ltd."

28. By letter dated June 30, 2020 from Liberty Mutual to Snow It All, a copy of which was also simultaneously sent to Western World, Liberty Mutual advised, in part, as follows:

> In a recent deposition, plaintiff claims, in part, that she slipped and fell on snow/ice on the sidewalk at/on/near the premises known as 98-16 101st Avenue, Ozone Park, New York. As such, we are once again tendering this matter to you pursuant to the Agreement for Services (" Agreement") between our respective insureds Snow

7

It All, Ltd and New York Community Bancorp, Inc. ("NYCB') dated 11/25/2014. As per the agreement, Snow It All, Ltd has agreed to perform snow and ice removal services at the subject location and in such a way as to prevent slip and fall incidences such as the one described herein.

The Agreement further requires your insured to defend, indemnify and provide additional insured insurance coverage in favor of New York Community Bancorp, Inc., New York Community Bank and New York Commercial Bank and their respective subsidiaries and affiliates. It further requires insurance coverage of no less than $1,000,000 in primary coverage and $5,000,000 in umbrella coverage. These coverages are also required to be primary and non-contributory over those carried by the Additional Insured.

As such, we respectfully demand that you assume the handling of this claim and to provide New York Community Bancorp, Inc. and its subsidiaries and affiliates with Additional Insured coverage and a defense and contractual indemnification immediately.

29. By letter dated December 28, 2021, AIG Claims, Inc., on behalf of Western World, responded to the June 30, 2020, stating in part as follows:

> The additional insured coverage provided by this endorsement does not apply to any liability arising out of the acts, omissions, and/or negligence of the additional insured. The evidence that has been presented thus far as to the events leading up to and causing the alleged injuries includes allegations of negligence on the part of your policyholder. Our policyholder is responsible only for snow removal within certain trigger criteria. Your insured, as owner of the premises is ultimately responsible for the condition of the premises. Our policyholder's work was complete and accepted by your policyholder well before the alleged incident. We therefore must deny your tender based on additional insured status.

30. Other than the aforementioned, the letter dated December 28, 2021, sent by AIG Claims, Inc., on behalf of Western World, does not raise any other defenses to coverage.

31. Liberty Mutual is entitled to recover attorneys' fees in this matter pursuant to N.Y. Ins. Law § 1213(d) (McKinney), insofar as Western World is an unauthorized foreign insurer, the Western World Policy was delivered in New York to a corporation authorized to do

business in New York, Western World has failed for thirty days after demand prior to the commencement of his to make payment pursuant to the Western World, and its refusal was vexatious and without reasonable cause.

## AS AND FOR A FIRST CLAIM FOR RELIEF

32. Liberty Mutual repeats, realleges, and reiterates each and every allegation contained in paragraphs "1" through "31" of this Complaint as if more fully set forth herein.

33. The NYCB Defendants qualify as an additional insureds under the Western World Policy for the claims alleged in the Underlying Action.

34. Western World owes the NYCB Defendants a duty to defend and indemnify for the claims alleged in the Underlying Action.

35. Western World's duty to defend and indemnify is primary as compared to any duty to defend and indemnify owed by Liberty Mutual to the NYCB Defendants.

36. Although duly demanded, Western World has failed and refused to provide a primary defense and indemnification to the NYCB Defendants.

37. Liberty Mutual seeks a determination of its rights with regard to the Western World Policy, including a declaratory judgment that Western World was and is required to defend and indemnify the NYCB Defendants for the Underlying Action under the Western World Policy, and that such coverage applies on a primary basis as compared to coverage under the Liberty Mutual Policy.

38. Liberty Mutual has no adequate remedy at law.

## AS AND FOR A SECOND CLAIM FOR RELIEF

39. Liberty Mutual repeats, realleges, and reiterates each and every allegation contained in paragraphs "1" through "38" of this Complaint as if more fully set forth herein.

9

40. As a result of Western World's failure to acknowledge that it owes a primary duty to defend the NYCB Defendants for the Underlying Action, Liberty Mutual has been required to pay for the NYCB Defendants' defense for the Underlying Action.

41. As a result of Western World' failure to acknowledge its primary duty to defend the NYCB Defendants for the Underlying Action, Liberty Mutual has incurred substantial attorneys' fees and other costs to defend the NYCB Defendants.

42. At all times mentioned herein, Western World has failed and refused to acknowledge its primary coverage obligation and to reimburse Liberty Mutual for costs incurred to defend the NYCB Defendants for the Underlying Action.

43. As a result of the foregoing, Liberty Mutual is entitled to a money judgment against Western World in an amount equal to what Liberty Mutual has incurred and will incur to defend and/or indemnify the NYCB Defendants for the Underlying Action, in an amount to be determined by the Court, plus interest.

**WHEREFORE**, plaintiff LIBERTY MUTUAL FIRE INSURANCE COMPANY demands judgment as follows:

1. On the first claim for relief, a declaratory judgment determining the respective rights and obligations of plaintiff LIBERTY MUTUAL FIRE INSURANCE COMPANY and defendant WESTERN WORLD INSURANCE COMPANY with respect to their liability insurance coverage obligations for the NYCB Defendants for the Underlying Action, including a declaratory judgment that defendant WESTERN WORLD INSURANCE COMPANY is required to defend and indemnify the NYCB Defendants for the Underlying Action, and that such coverage would apply on a primary basis as compared to coverage under the Liberty Mutual Policy for the NYCB Defendants;

   2. On the second claim for relief, a money judgment in favor of plaintiff LIBERTY MUTUAL FIRE INSURANCE COMPANY and against defendant WESTERN WORLD INSURANCE COMPANY, in an amount to be determined by the Court, plus interest;

   3. Granting plaintiff recovery of the costs and disbursements of this action, plus attorneys' fees, together with such other and further relief as this Court deems just and proper.

Dated: White Plains, New York

             Yours, etc.,

             JAFFE & ASHER LLP

             By:_____
             Marshall T. Potashner, Esq.
             Attorneys for Plaintiff
             LIBERTY MUTUAL FIRE INSURANCE
             COMPANY
             445 Hamilton Avenue, Suite 405
             White Plains, New York 10601
             (212) 687-3000